**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| G & G Closed Circuit Events LLC, | No. CV-22-00302-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| George C Palomarez, et al., | |
| Defendants. | |

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. 18) and Plaintiff's Motion for Partial Summary Judgment (Doc. 20).[1]  Plaintiff filed a Response in opposition to Defendants' Motion.  (Doc. 22.)  Defendants did not respond to Plaintiff's Motion[2] and did not file a reply in support of their own Motion.

**I.      Facts**[3]

Little Mexico Steakhouse is a bar and restaurant located at 2851 W. Valencia Road in Tucson, Arizona.  (Doc. 19 at 1; Doc. 21 at 2 ¶¶ 3-4; Doc. 23 at 3.)[4]  Defendant

---

[1] All record citations herein refer to the docket and page numbers generated by the Court's electronic filing system.  The Court finds the pending Motions are appropriate for resolution without oral argument.

[2] Rule 7.2(i) of the Local Rules of Civil Procedure allows the Court to summarily grant a motion if a party fails to file a required answering memorandum.  However, notwithstanding LRCiv 7.2(i), a motion for summary judgment cannot be granted summarily.  *See Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

[3] Unless otherwise noted, there are no material disputes as to the facts recited herein.

[4] Defendants' Statement of Facts is presented in narrative form rather than in separately numbered paragraphs, in violation of LRCiv 56.1(a).  Although this Local Rule violation made it somewhat more cumbersome for Plaintiff to respond (*see* Doc. 23), the Court in its discretion declines to summarily deny Defendants' Motion on the basis of a violation of LRCiv 56.1(a).

Carlos Palomarez ("C. Palomarez") was at all relevant times the President and Chief Executive Officer of Defendant Little Mexico Steakhouse, Inc., which operates Little Mexico Steakhouse.  (Doc. 1 at 3 ¶ 8; Doc. 7 at 2 ¶ 8; Doc. 21 at 2 ¶¶ 3-4.)  Defendant George Palomarez ("G. Palomarez") was the Vice President of Little Mexico Steakhouse, Inc., and Defendant Patricia Palomarez ("P. Palomarez") was the Director.  (Doc. 1 at 3-4 ¶¶ 9-10; Doc. 7 at 2 ¶¶ 9-10; Doc. 21 at 2-3 ¶¶ 5, 7; Doc. 20-2 at 39-41.)  C., G., and P. Palomarez are all managers of Little Mexico Steakhouse, in addition to being officers of Little Mexico Steakhouse, Inc.  (Doc. 20-2 at 48, 56, 64, 96-97; Doc. 21 at 3 ¶ 10.)  Little Mexico Steakhouse has televisions for the viewing pleasure of its patrons, and it exhibits programming that it believes to be of interest to the patrons.  (Doc. 20-2 at 48, 56, 64, 72, 97.)

On August 21, 2021, C. Palomarez screened the boxing event *Manny Pacquiao v. Yordenis Ugas* ("the Program") on three televisions at Little Mexico Steakhouse while patrons were present and while food and beverages were being sold to patrons.  (Doc. 18-4; Doc. 19 at 2; Doc. 20-2 at 6-7; Doc. 21 at 2, 4 ¶¶ 1, 14-15.)  According to a declaration supported by a receipt and credit card statement, C. Palomarez purchased a pay-per-view live stream of the Program from Fox Sports.  (Docs. 18-2, 18-3, 18-4.)  C. Palomarez avers that he ordered the Program to stream online for purposes of his personal viewing, that he cast it from his laptop to the bar televisions so that he could view it while he worked, and that he did not order the Program for viewing by satellite or cable transmission.  (Doc. 18-4.)  He further avers that he did not advertise the Program and did not charge any type of admission, and that Little Mexico Steakhouse made less gross revenue on the Saturday night in question than on the prior or next Saturday nights.  (*Id.*)

Plaintiff G & G Closed Circuit Events, LLC ("Plaintiff" or "G & G") retains the exclusive nationwide commercial distribution and anti-piracy enforcement rights with respect to the Program.  (Doc. 20-2 at 15-16, 24-35; Doc. 21 at 2 ¶ 2.)  Plaintiff does not own the residential distribution rights.  (*See* Doc. 20-2 at 24-35.)  Nicolas Gagliardi, the President of G & G, avers that the Program was legally available to commercial

establishments in Arizona only through an agreement with Plaintiff.  (Doc. 20-2 at 16.)
Gagliardi further avers that the Program originated via satellite uplink, was re-transmitted
via cable systems and satellite signal, and was available to commercial establishments
through various methods, including cable, satellite, and streaming.  (*Id.* at 19.)
Defendants did not order the Program from Plaintiff or purchase a commercial license
from Plaintiff to exhibit the Program, and they knew Little Mexico Steakhouse was not
authorized to exhibit the Program.  (Doc. 20-2 at 17, 45-46, 49, 53-54, 57, 61-62, 65, 69-
70, 73, 118; Doc. 21 at 3-4 ¶¶ 11, 17.)  Little Mexico Steakhouse had DirecTV satellite
service on the date of the Program.  (Doc. 20-2 at 77; Doc. 21 at 4 ¶ 19.)

The evidence submitted by the parties indicates that C. Palomarez paid $74.99
(plus tax) to stream the Program.  (Docs. 18-2, Doc. 18-3.)  G & G charged $1,300 for a
commercial license to exhibit the Program at an establishment with a capacity of 1 to 100
people, and $1,700 for a commercial license to exhibit the Program at an establishment
with a capacity of 101 to 200 people.  (Doc. 20-2 at 37.)  C. Palomarez avers that Little
Mexico Steakhouse has a maximum capacity of under 100 patrons.  (Doc. 18-4 at 1.)
Investigator Valerie Combs, who visited Little Mexico Steakhouse on August 21, 2021,
estimates the capacity of the establishment to be 100 to 125 people.  (Doc. 20-2 at 6-7.)

## II.    Legal Standard

A court must grant summary judgment "if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a matter
of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23
(1986).  The movant bears the initial responsibility of presenting the basis for its motion
and identifying those portions of the record, together with affidavits, if any, that it
believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at
323.  If the movant fails to carry its initial burden of production, the nonmovant need not
produce anything.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03
(9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the
nonmovant to demonstrate the existence of a factual dispute and to show (1) that the fact

in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and (2) that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *see also Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  In evaluating a motion for summary judgment, the court must "draw all reasonable inferences from the evidence" in favor of the non-movant. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).  If "the evidence yields conflicting inferences, summary judgment is improper, and the action must proceed to trial." *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III.    Discussion

In its Motion for Partial Summary Judgment, Plaintiff asks the Court to find liability under 47 U.S.C. § 605, arguing that there is no genuine dispute Defendants unlawfully intercepted or received the Program at a commercial establishment, nor any genuine dispute that Plaintiff is a person aggrieved under § 605.  (Doc. 20-1.)  Plaintiff argues there is evidence of interception of a satellite signal because Defendants had DirecTV service on the date of the Program, and the Program originated via satellite uplink and was retransmitted via satellite signal.  (*Id.* at 6-7.)  Plaintiff further argues that, even if Defendants transmitted the program via the Internet, liability is nevertheless proper under 47 U.S.C. § 605.  (*Id.* at 8-9.)  Finally, Plaintiff argues that C., G., and P. Palomarez are vicariously liable.  (*Id.* at 10-14.)

In their Motion for Summary Judgment, Defendants argue that they are entitled to summary judgment because neither 47 U.S.C. § 553 nor 47 U.S.C. § 605 applies to signals received over the Internet, and the evidence shows C. Palomarez streamed the Program over the Internet.  (Doc. 18 at 4-6.)  In the alternative, Defendants argue that the

1    Court should grant them partial summary judgment and find they are not liable for

2    enhanced statutory damages because there is no evidence Defendants committed a willful

3    violation of §§ 553 or 605.  (*Id.* at 6-8.)  Finally, Defendants argue that if this Court is

4    inclined to grant summary judgment in favor of Plaintiff, only minimal damages are

5    appropriate.  (*Id.* at 9-12.)  In response, Plaintiff argues there is evidence of a satellite

6    violation and also disputes Defendants' position that §§ 553 and 605 do not apply to

7    Internet streaming.  (Doc. 22 at 6-12.)  Plaintiff further argues that there is a genuine

8    issue of fact regarding enhanced damages and that it would be premature for the Court to

9    determine damages at this time.  (*Id.* at 12-17.)

10       Section 553 of Title 47 of the United States Code prohibits the unauthorized

11   interception of cable communications.  47 U.S.C. § 553(a)(1).  Section 605 prohibits the

12   unauthorized interception of radio communications and satellite television signals.  47

13   U.S.C. § 605(a); *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("the

14   'communications' protected by § 605(a) include satellite television signals").  A person

15   aggrieved by a violation of §§ 553 or 605 may bring a civil action in a United States

16   district court.  47 U.S.C. § 553(c)(1); 47 U.S.C. § 605((e)(3)(A).

17       There is no genuine dispute that Defendants exhibited the Program in a

18   commercial establishment without Plaintiff's authorization.  There is also no genuine

19   dispute that Plaintiff purchased and retained the exclusive nationwide commercial

20   distribution and anti-piracy enforcement rights with respect to the Program.  However,

21   Defendants argue that they are not liable because §§ 553 and 605 do not apply to signals

22   received over the Internet, and C. Palomarez streamed the Program over the Internet.

23   (Doc. 18 at 4-6.)  Although the Court disagrees that §§ 553 and 605 never apply to

24   signals received over the Internet, the Court will grant summary judgment in Defendants'

25   favor because Plaintiff has failed to produce evidence showing that the Program was

26   transmitted via cable, radio, or satellite signals, as required to establish liability under §§

27   553 or 605.

28       Neither § 553 nor § 605 "expressly references Internet streaming," nor does either

statute "provide for an 'Internet defense' that automatically absolves an entity of liability." *G & G Closed Circuit Events, LLC v. Liu*, 45 F.4th 1113, 1116-17 (9th Cir. 2022).  In *Liu*, the Ninth Circuit recognized that "transmissions over the Internet involve myriad technologies that may include both cable and satellite components." *Id.* at 1116.  The Court then upheld the district court's grant of summary judgment to the defendant because the plaintiff had "failed to meet its burden of production to establish that [the defendant's] method of transmitting" the program at issue came "within the ambit of §§ 553 or 605." *Id.* at 1117.  The Court noted the absence of any evidence addressing whether the program had been transmitted by way of a "cable system" within the meaning of § 553 or a radio or satellite transmission "as would be required to establish liability under § 605." *Id.*  In particular, the Court faulted the plaintiff for failing to undertake any "discovery about the nature of the transmission to or from . . . the entity from which" the defendant had purchased the program. *Id.*

Here, as in *Liu*, Plaintiff has failed to present evidence establishing that Defendants' transmission of the Program falls within the ambit of §§ 553 or 605.  *See* 45 F.4th at 1116-18; *see also G & G Closed Circuit Events, LLC v. Reto*, No. 21-56055, 2022 WL 3644859, at *1 (9th Cir. Aug. 24, 2022) (mem.); *G & G Closed Circuit Events, LLC v. Snukal*, No. 21-55488, 2022 WL 3644871, at *1 (9th Cir. Aug. 24, 2022) (mem.).  Plaintiff asks that liability be found under § 605 (Doc. 20-1 at 6), and it presents evidence that Little Mexico Steakhouse had DirecTV satellite service on the date of the Program (Doc. 20-2 at 77).  However, Plaintiff presents no evidence that Defendants exhibited the Program using their DirecTV satellite service.  To the contrary, Defendants have submitted undisputed evidence showing that C. Palomarez paid Fox Sports a pay-per-view fee to live stream the Program over the Internet.  (Docs. 18-2, 18-3, 18-4.)[5]  Plaintiff has presented no evidence regarding how the Program was transmitted to Fox Sports and

_____

[5] Plaintiff relies on *Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*, in which the court found that evidence of the defendant's satellite service was sufficient to establish interception of the program at issue via satellite signals.  161 F. Supp. 3d 910, 915 (E.D. Cal. 2016).  *Joe Hand* is not binding precedent, and it is distinguishable because the defendant in that case did not offer any evidence indicating the program at issue had been "received through some other method." *Id.*

no evidence regarding the technologies involved in the Internet transmission of the Program from Fox Sports to Little Mexico Steakhouse.

In his affidavit, Gagliardi avers that the Program "originate[d] via satellite uplink," was "subsequently re-transmitted to cable systems and satellite systems via satellite signal," and was lawfully available to commercial establishments "through various methods, including cable, satellite, and streaming." (Doc. 20-2 at 19.) The admissibility of this testimony is uncertain, as Gagliardi fails to explain how he learned this information. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *G & G Closed Circuit Events LLC v. Bertolini*, No. 21cv7351 (DLC), 2023 WL 2711468, at *3 (S.D.N.Y. Mar. 30, 2023) (faulting a similar affidavit for its failure to explain how Gagliardi "learned what he reports"). Furthermore, even assuming its admissibility, Gagliardi's affidavit does not "show that all transmissions" of the Program originated from "satellite uplink, such that any broadcast of the Program would have necessarily been through receipt of a transmission originating from a satellite transmission." *Bertolini*, 2023 WL 2711468, at *3 (granting summary judgment to the defendants because the plaintiff offered no admissible evidence that the transmission intercepted or received by the defendants originated or was transmitted via satellite signal). In its closed-circuit license agreement, Plaintiff acknowledged that "live and delayed cable television, direct broadcast satellite television and digital online internet transmission and exhibitions" of the Program would be licensed "on a residential pay-per-view basis." (Doc. 20-2 at 27.) Gagliardi's affidavit fails to show that "satellite transmission was the sole source of transmission" to residential licensees. *Bertolini*, 2023 WL 2711468, at *3.

Defendants carried their initial burden of showing that Plaintiff "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. Plaintiff failed to meet its burden of producing evidence showing that Defendants' method of transmitting the

Program falls within the ambit of 47 U.S.C. §§ 553 or 605.  Because Plaintiff "failed to produce evidence to support its claim after [Defendants] carried [their] initial burden," *Liu*, 45 F.4th at 1115, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 18) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 20) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants and close this case.

Dated this 4th day of August, 2023.

_____
Honorable Rosemary Márquez
United States District Judge